UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

DANIEL S. MESTRE, JR.,

    Plaintiff,

        v.

GARDEN HOMES MANAGEMENT CORP.,

    Defendant/Third-Party Plaintiff,

        v.

R. JEFFREY BUTLER,

    Third-Party Defendant.

1:16-cv-03231-NLH-AMD

**OPINION**

---

**APPEARANCES:**

BRIAN P. MCVAN
MCVAN & WEIDENBURNER
162 S EASTON ROAD
GLENSIDE, PA 19038

    *On behalf of Plaintiff*

CHRISTOPHER T. CHANCLER
POST & SCHELL PC
1600 JOHN F. KENNEDY BOULEVARD
PHILADELPHIA, PA 19103

    *On behalf of Defendant/Third-Party Plaintiff*

**HILLMAN**, District Judge

    Presently before the Court is Defendant's motion for summary judgment on Plaintiff's claims concerning an assault that occurred at a mobile home community. Defendant's motion will be denied.

## BACKGROUND

On June 7, 2014, Plaintiff Daniel Mestre resided with his sister, Kathleen Barrett, in the Town and Country Mobile Home Community, Chesilhurst, New Jersey,[1] owned by Defendant Garden Homes Management Corporation. At approximately 6:00 p.m. on that day, Jeffrey Butler, the husband of Kathleen,[2] came to Plaintiff's trailer to discuss comments Plaintiff had allegedly made about Butler to his sister. Butler hit Plaintiff twice on the head with a metal pipe. Plaintiff contends that this was a sudden attack without warning, lasting approximately 25 to 45 seconds.

Plaintiff sustained serious personal injuries as a result of this altercation, including a concussion, nasal fractures, multiple rib fractures and a collapsed lung. He was hospitalized from June 7, 2014 to June 23, 2014. Butler was charged with assault in relation to this incident but ultimately found not guilty.[3]

---

[1] Plaintiff moved into the trailer of his sister in April of 2014 to recover from surgery.

[2] At some point prior to November 2013, Butler moved into his mother's trailer in the Town & Country mobile home community and met Barrett, whom he eventually married.

[3] Plaintiff relates that while the criminal case was pending, Butler solicited Barrett to aid him in a scheme to offer Plaintiff money to drop the case. This resulted in an additional charge against Butler for witness tampering. At trial, Butler was convicted of harassment and conspiracy and was sentenced to several months in jail. (Docket No. 68 at 18.)

Plaintiff claims that Defendant is liable for plaintiff's injuries because it owed a duty to maintain its business premises in a reasonably safe and secure condition and had a duty to warn its residents of dangerous conditions and to take reasonable measures to protect them.  Plaintiff claims Defendant breached this duty and was negligent in failing to act reasonably to protect the community in accordance with its own rules and regulations by failing to take meaningful measures to remove Butler from the community prior to the alleged assault.  Plaintiff claims this breach of duty was the cause of his injuries.[4]

Defendant has moved for summary judgment, arguing that Plaintiff has not identified any facts that could sustain a prima facie case of negligence against Defendant.  Defendant argues that it had no legal duty to protect Plaintiff from the unforeseeable criminal acts of a third party.  Plaintiff has opposed Defendant's

---

[4] On February 28, 2017, Defendant filed a third-party complaint against Butler for indemnity and contribution should Plaintiff establish liability against Defendant.  (Docket No. 14.)  On April 17, 2017, Butler filed an unsigned answer to Defendant's third-party complaint, (Docket No. 21), and on November 15, 2017, Butler filed a motion for pro bono counsel (Docket No. 34), which was denied on November 20, 2017 because Butler failed to provide the court with the information necessary to adequately address the application (Docket No. 36).  Butler renewed his motion on May 9, 2018 (Docket No. 51), and it was again denied on June 12, 2018 (Docket No. 53).  As of August 8, 2018, mail sent by the Clerk to Butler has been returned as undeliverable.  (Docket No. 56, 60.)  It appears from the parties' briefing that Butler was, and still may be, incarcerated. (Docket No. 68 at 18.)

motion. Plaintiff argues that Butler's attack on Plaintiff was foreseeable because defendant had notice of Butler's past criminal conduct as well as addition criminal and dangerous conduct on the relevant premises.

## DISCUSSION

### A. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. Plaintiff is a citizen of Pennsylvania, and Defendant is a citizen of Connecticut (its state of incorporation and its principal place of business).

### B. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing

substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).  Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

    **C.**    **Analysis**

    The law on premises liability for business invitees has been long-established.  "Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for

doing that which is within the scope of the invitation," and that duty of care "requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." Nisivoccia v. Glass Gardens, Inc., 818 A.2d 314, 316 (N.J. 2003) (citations omitted).

In order to make out a *prima facie* case of premises liability, a plaintiff is required to show either (1) that defendant knew of the unsafe condition for a period of time prior to plaintiff's injury sufficient to permit defendant in the exercise of reasonable care to have corrected it; or (2) that the condition had existed for a sufficient length of time prior to plaintiff's injury that in the exercise of reasonable care defendant should have discovered its existence and corrected it. Lanigan v. Marina Dist. Development Co., LLC, Civ. A. No. 08-5201, 2011 WL 1211320 (D.N.J. March 28, 2011) (citing Collier v. Borgata, 2009 WL 2707359, *5 (N.J. Super. App. Div. 2009) (citing Parks v. Rogers, 176 N.J. 491, 498 n.3 (2003) (other citations omitted)).

This standard usually applies in circumstances where a patron is injured by an unsafe condition of the actual physical premises, such as water or food on the floor. This case, which concerns claims by a tenant against the property owner arising out of an assault by another tenant, puts the premises liability

6

standard in a different context. Specifically, "[b]usiness owners and landlords have a duty to protect patrons and tenants from foreseeable criminal acts of third parties occurring on their premises." Kuehn v. Pub Zone, 835 A.2d 692, 698 (N.J. Super. App. Div. 2003) (citations omitted).

The New Jersey courts have adopted the Restatement (Second) of Torts Section 344, Comment (f) as a standard for determining in cases of injury by third persons which criminal incidents may give rise to liability:

> Section 344 provides: A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts are being done or are likely to be done, or
>
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.
>
> Comment (f) to Section 344 states: Duty to police premises. Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably

sufficient number of servants to afford a reasonable
protection.

Kuehn, 835 A.2d at 698–99.

"[F]oreseeability does not require the existence of prior similar criminal incidents, but depends instead on an evaluation of the totality of the circumstances." Id. at 698(citation omitted). "Foreseeability as it impacts duty determinations refers to the knowledge of the risk of injury to be apprehended. The risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty to exercise care." Id. (citations omitted).

With these standards in mind, Defendant argues that it was not foreseeable that Butler would attack Plaintiff in a one-time occurrence that lasted no more than 45 seconds. Plaintiff, on the other hand, argues that Defendant knew, or should have known, that Butler was dangerous and Defendant failed to take any action to protect its tenants.[5]

---

[5] Plaintiff does not advance a "mode-of-operation" claim. A plaintiff is relieved of proving notice "in circumstances in which, as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." Nisivoccia v. Glass Gardens, Inc., 818 A.2d 314, 316 (N.J. 2003). This "mode-of-operation" rule, which has been incorporated into New Jersey's Model Jury Instructions, states "that when a substantial risk of injury is inherent in a

8

More specifically, Defendant argues that it was not foreseeable that Butler would suddenly attack Plaintiff with a pipe. Defendant argues that Butler's criminal background check reported old, non-violet offenses;[6] people in the community wrote letters of praise to Defendant regarding Butler's application for residency;[7] Barrett wrote a letter retracting her previous

---

business operator's method of doing business, the plaintiff is relieved of showing actual or constructive notice of the dangerous condition." Id.

[6] In November 2013, Butler filed an application to become a resident. Defendant conducted a background check, which revealed:

> March 12, 1981 – convicted of felony burglary
>
> July 9, 1983 – convicted of felony robbery
>
> August 8, 2000 – guilty/no contest and sentenced to six months to felony possession of firearm by felon
>
> August 2, 2002 – convicted and sentenced to 60 months probation for felony conspiracy to commit burglary of unoccupied structure
>
> December 22, 2004 – convicted and sentenced to 15 months for felony conspiracy to commit burglary of occupied dwelling
>
> January 9, 2007 – felony grand theft motor vehicle

(Docket No. 65-5 at 28-36.) On the application Butler was asked to attach an explanatory sheet for any convictions which he failed to do. The resident manager, Virginia Dean, noted in the manager's comments section of the application, "He goes over to lot #59 and causes a scene where police are called out." (Docket No. 65-5 at 26.)

[7] In December 2013, several tenants wrote letters to Defendant to express their desire to permit Butler to remain as a tenant

statements about Butler[8] and indicated that they were working on their relationship;[9] no incidents involving Butler occurred from December 2013 through June 3, 2014, which is a span of six months prior to the incident; Butler and Plaintiff never had any altercations previously; and the entire incident between Butler and Plaintiff lasted no more than 45 seconds.

Based on these factors, Defendant argues that it had no reason to know such an incident would occur between Butler and Plaintiff, and it had no reasonable opportunity to prevent such an unforeseeable and sudden altercation.

Plaintiff disputes Defendant's position, arguing that it was known to Defendant that Butler had committed many offenses - those reported on his criminal background check and by Barrett - many of which cannot be construed as non-violent. Plaintiff

---

because he was helpful and they never had a problem with him.

[8] By November 2013, Butler and Barrett were having marital problems, and the police were called to the mobile home community seven times (November 1st, 4th, 8th, 9th, 11th, 13th, and 14th). In addition, in November 2013, Barrett sent Defendant a letter stating that since February 24, 2012, Butler had two DUIs, four simple assaults, one criminal mischief, one resisting arrest, eluding police officers, and one simple assault. (Deposition of Garden Homes Management Regional Manager, Donald Paetzold, Docket No. 68-1 at 14.)

[9] Barrett wrote a letter to Defendant in December 2013 retracting her November 2013 letter, advising that they were working on their relationship, and asking that Butler be allowed to stay in the community.

argues that after Defendant rejected Butler's residency application in December 2013,[10] Defendant did nothing to remove Butler from living in the community anyway. Plaintiff further argues that while property manager Victoria Dean posted "wanted" posters asking the community to call the police if they saw Butler, she never did that herself even after seeing Butler about once a week after the December 2013 denial of Butler's residency application. Plaintiff argues that Butler's violent background and Defendant's failure to take any action to remove Butler from the premise demonstrates that Defendant failed in its duty to protect Plaintiff from a foreseeable harm.

The Court finds that a jury must assess whether Butler's actions were foreseeable and whether Defendant's failure to remove Butler from the property,[11] in light of the information

---

[10] Butler's application was residency application was denied in December 2013 because of Butler's "serious criminal record." (Deposition of Garden Homes Management Regional Manager, Donald Paetzold, Docket No. 68-1 at 11-12.)

[11] Defendant posits that Butler was a "guest tenant" and therefore permitted on the property, but Defendant's regional manager classified Butler as an "illegal tenant", (Paetzold Dep. Docket No. 68-1 at 6-7), suggesting he did not qualify as such under Defendant's written guest policy which provides:

> Residents are required to register a *guest (anyone staying for more than 2 weeks)* in their home by first submitting a letter to the Stamford office identifying their guest(s). Once the Stamford office receives their letter, we will provide you with a copy of it and advise the resident to contact you to schedule an appointment for the <u>guest</u> to complete a guest application with you, in person, for

they had about Butler, caused Plaintiff's injuries.

To hold Defendant liable it must be found that Defendant failed to exercise reasonable care to "(a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it." <u>Kuehn</u>, 835 A.2d at 698–99. Defendant has not shown the absence of disputed material facts on those two elements. To make that determination, a jury must consider Defendant's actions relative to Butler's continued, "illegal" presence in the mobile home community along with the other facts concerning Defendant's knowledge of Butler's criminal history and the nature of the incident between

---

submission to the Stamford office. **The guest must provide a copy of their current photo driver's** license. A $50.00 processing fee is also required (except in Vermont).

We <u>do not</u> need any information from our tenant to be provided on this application.

**The "Present Address" is** <u>not</u> the address in the Community. Guests must provide you with the address they are or were living at prior to living in the Community (which should be what is listed on **their driver's license).**

All information on the guest application is to be completed in full just as if they were applying for tenancy in the Community.

We will notify the tenant in writing of our decision regarding the application and will provide you with a copy of the letter.

(Docket No. 69 (emphasis in original).)

Butler and Plaintiff.  See Butler v. Acme Markets, Inc., 445 A.2d 1141, 1146 (N.J. 1982) (explaining that it is for a jury to determine if a business establishment has exercised reasonable care in the performance of its duty to safeguard its business invitees from the criminal acts of third persons); Zepf v. Hilton Hotel & Casino, 786 A.2d 154, 161 (N.J. Super. Ct. App. Div. 2001) (discussing Clohesy v. Food Circus Supermarkets, Inc., 694 A.2d 1017 (1997)) (explaining that because a business owner has a duty to protect its patrons from foreseeable criminal acts which occur on its property, it has a duty to provide security--what kind of security, however, is "determined on a case-by-case basis, applying the totality of the circumstances standard").

Defendant has failed to show the absence of disputed issues of material fact on each of the elements of Plaintiff's claim of negligence.  Consequently, a jury must decide whether Defendant is liable for Plaintiff's injuries.

## CONCLUSION

For the reasons expressed above, Defendant's motion for summary judgement will be denied.  An accompanying order will be entered.


Date:  August 9, 2019          __s/ Noel L. Hillman_____
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.